IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FELIPE DE JESUS CORIA,<br>*Plaintiff*, | § § § § § § § § | |
| vs, | | Civil Action No._____ |
| ABELARDO GOMEZ, JR.,<br>*Defendants*. | | JURY DEMANDED |

PLAINTIFF'S ORIGINAL COMPLAINT

Now Comes, Plaintiff, FELIPE DE JESUS CORIA, by and through its undersigned attorney, as and for its Complaint against Defendant Cameron County Constable for Precinct 2 Abelardo "Abel" Gomez, Jr. in his individual and official capacity, pursuant to 42 U.S.C. § 1983, for violating his constitutional right to free speech, and alleges, upon knowledge as to itself, and otherwise upon information and belief, as follows:

I. NATURE OF THE ACTION

1.1 Plaintiff, FELIPE DE JESUS CORIA, is a Lieutenant with the Cameron County Constables Office Precinct 2 ("CCCO") and brings this civil rights action to redress the deprivation, under color of state law of rights, privileges, and immunities secured by the First Amendment to the United States Constitution as applied to the States via the 14th Amendment.

1.2 This claim arises from the concerted retaliatory action of the Defendant, Cameron County Constable Abelardo Gomez Jr. ("Constable Gomez"), against Lieutenant Coria for voicing his intention to run for the political office, specifically for the position of Cameron County Constable Precinct 2 currently held by Constable Gomez.

1.3 Defendant, Cameron County Constable Abelardo Gomez Jr. has retaliated against Lt. Coria with the following actions:

a. transferring him to the Security Detail at the Cameron County Courthouse Parking lot from the prestigious supervisory role of first Lieutenant.

b. removing him from major crime investigations,

c. stripping Lieutenant Coria's position as the main liaison to federal tasks forces, including Operation Stonegarden.

d. stripping him of all supervisory duties, subordinates, and supervisory patrol duties;

e. assigning him to shift schedules and working conditions not given to other CCCO Pct 2 supervisors.

f. requiring him to perform menial and pointless tasks at the Cameron County Courthouse parking lot, which the Cameron County Sheriff's Office also patrols.

1.3   In this action, Lieutenant Coria seeks compensatory and punitive damages, attorney fees, declaratory relief, and injunctive relief requiring Constable Gomez to assign Lieutenant Coria to a position that exercises supervisory authority, with all of the customary benefits and privileges granted to supervisors of the CCCO and prohibiting Constable Gomez from subsequently reassigning him based on his protected activity and right to seek political office.

## II. PARTIES

2.1   Plaintiff, FELIPE DE JESUS CORIA, is an individual citizen and resident of Cameron County, Texas. Plaintiff is a Lieutenant with the Cameron County Constable Precinct 2's Office.

2.2   Defendant, ABELARDO "ABEL" GOMEZ, JR., is a Cameron County, Texas resident. Mr. Gomez may be served at his place of business, 835 E. Levee, 2nd Floor, Brownsville, Texas 78575. At all relevant times, Mr. Gomez was and is the Constable for Precinct 2 of Cameron County, Texas, and is sued herein in both his individual and official capacities.

## III. JURISDICTION AND VENUE

3.1   Pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), this Court has jurisdiction over this matter.

3.2     Pursuant to 28 U.S.C. 1391(b)(2), this matter is brought in the proper venue.

## IV. FACTUAL ALLEGATIONS

4.1     Lieutenant Coria is a committed Law Enforcement professional with nine (9) years of military experience, two (2) years as a detention officer experience, and has been a full time Licensed Texas Peace Officer for over sixteen (16) years, having acquired an intermediate, advanced and a Master Peace Officer License.

4.2     Lieutenant Coria has been with the Cameron County Constable's Precinct Two Office for eight (8) years and eleven (11) months. Lieutenant Coria has never been the subject of disciplinary action or reprimands.

4.3     Lieutenant Coria's job duties included supervising numerous subordinates, responding to emergencies, investigating major crime scenes, collecting evidence, revising reports (offense and incidents), interviewing witnesses, testifying in Court, submitting racial profiling statistics every year, and supervising the patrol division Constable Deputies.

4.4     Lieutenant Coria's position included various benefits, such as an office, a preferred work schedule of 8:00 am to 5:00 pm with weekends off, a late model fleet unit, and served in the prestigious assignment of being the Constable Deputy liaison to U.S. Border Patrol R.G.V. Intel Unit.

4.5     On or about late August 2021, Cameron County Constable Pct. 2 Lieutenant Felipe de Jesus Coria was vocal in contemplating a run for public office against Constable Abelardo "Abel" Gomez Jr. with some of his subordinates, including Constable Deputies Mario Jacinto, Carlos Ambriz, Juan Carlos Bermudez, Roberto Mata, Julian Olvera, Enrique Rosas, Manuel Maldonado, Miguel Escobedo and with some of his family members and close friends.

4.6      Shortly after, on September 9, 2021, at 8:39 pm, Lieutenant Coria received a text

message via the *WhatsApp* cellphone application from Constable Gomez. The text message informed Lieutenant Coria that his work schedule was changing tomorrow morning from 8:00 am to 5:00 pm to 5 am traffic patrol.

4.7    Constable Gomez informed Lieutenant Coria he was to patrol the area around State Highway 4 by the Space X facilities to enforce traffic violations from 5:00 am thru 7:00 am before reporting to his office. This task is usually left to incoming patrol deputy Constables never a Lieutenant.

4.8    The following week, Constable Gomez again changed Lieutenant Coria's shift from 5:00 am thru 3:00 pm with one hour lunch. Constable Gomez knew Lieutenant Coria had parental custody of his two-year-old daughter the day he changed his schedule, intentionally putting Lieutenant Coria in a difficult situation with his parental duties. Lieutenant Coria promptly responded to Constable Gomez's message. He was willing to work on the detail, but he asked the Constable to please give him a more timely notice of any changes to make accommodations for his child's care.

4.9    Constable Gomez responded, "Ok, then you are scheduled from 10 am to 7 pm and cover the Space X traffic enforcement detail from 5 pm thru 7 pm" Lt. Coria was the only Lieutenant and supervisor at Cameron County Pct. 2 who was scheduled for traffic enforcement.

4.10   On September 19, 2021, at approximately 8 pm, Lt. Coria contacted Constable Gomez via *Whatsapp* texting application asking about his schedule the following week. Constable Gomez replied via *Whatsapp* message that his schedule would be 10 am to 7 pm conducting traffic enforcement at Space X. As a result, Lieutenant Coria was stripped of all subordinates and ordered to patrol without assistance in the evening hours.

4.11   On September 20, 2021, Sergeant Julian Olvera told other Deputies who were having lunch with him that Constable Gomez seemed upset because Lieutenant Coria was contemplating

running against him. Deputy Carlos Ambriz informed Lieutenant Coria several days after it occurred.

4.12    On September 22, 2021, Constable Gomez produced the "Operation Stonegarden's" schedule for the week. Deputies prize this assignment because it pays for additional overtime, which greatly supplements their salaries. Lieutenant Coria was automatically excluded from participating or obtaining over time due to his new work schedule assignment.

4.13    On September 23, 2021, Constable Gomez was quickly made aware that his actions were retaliatory and would get him in trouble. At approximately 5:46 pm, Constable Gomez sent Lieutenant Coria a message via *WhatsApp* again, changing his work schedule from 8 am to 5 pm.

4.14    That same day, Constable Gomez informed Lieutenant Coria that Deputy Roberto Mata would take over operation Stonegarden, a State and Federal Joint task force that managed. Additionally, Constable Gomez ordered Lieutenant Coria to train Deputy Mata, who had no prior experience in this role, to replace him in his Stonegarden role.

4.15    On September 29, 2021, at approximately 5:41 pm, Lieutenant Coria received a yet another message from Constable Gomez via *WhatsApp*, changing his directive, this text reads, "Starting October 1, you will be reassigned to cover security details at the Cameron County State Courthouse, Cameron County Administrative building, and the Cameron County - Dancy Building. Lieutenant Coria's duties would include covering posts for other deputies during their lunch breaks and covering positions if anyone is absent. Lieutenant Coria was informed he should not leave these areas for any reason unless approved by Constable Gomez or Chief Perez.

4.16    Lieutenant Coria's security assignment is usually left to "rookie" or incoming patrol deputies. The position offers far fewer opportunities for career advancement, would not allow for overtime, carries a total loss of professional responsibilities, and was orchestrated by Constable Gomez to humiliate Lieutenant Coria to the point he would resign from the Constable Office.

4.17    Constable Gomez informed Lieutenant Coria that he was no longer responsible for investigations or supervising patrol deputies. Instead, Lieutenant Coria would report to a subordinate. Exacerbating the situation, Constable Gomez orders Lieutenant Coria to start "clocking in" with a time card. In the 16 years of service with the Constables office as a supervisor, Lieutenant Coria had never had a time card to clock in adding pressure with the sole purpose of tiring Lieutenant Coria and pressuring him to resign with the Constable office.

4.18    On September 30, 2021, at approximately 4:30 pm, Constable Gomez deleted Lieutenant Coria from the Cameron County Constable Pct. 2 Whattsapp "patrol" Chatgroup for the Constables Office, further excluding him from the Constables office.

4.19    On October 5, 2021, at approximately 2:45 pm, Deputies Roberto Mata and Manuel Maldonado arrived at Lieutenant Coria's private residence. They illegally trespassed Lieutenant Coria's property and tried to "take" Lieutenant Coria's Marked Patrol Unit. Lieutenant Coria's daughter quickly screamed they were trying to "take the Unit," and Lieutenant Coria promptly came out of his residence and confronted Deputies Roberto Mata and Deputies Manuel Maldonado. Lieutenant Coria was informed they were ordered to take his unit and gather belongings from the vehicle's interior. If Lieutenant Coria's daughter had not advised him, they would have taken his personal belongings.

4.20    All supervisors in the Constable's Office are assigned fleet units that are at least a 2019 model or newer. However, Lt. Coria was stripped of his unit and never issued a replacement even though he is a Lieutenant.

4.21    The dramatic shift assignment from supervisory role to security detail and the total loss of professional responsibilities, when combined with the supervisory vacancies in the patrol division, has caused Lieutenant Coria to believe that his reassignment was not done to meet the needs of the operation of the Constables Office, but rather to professionally humiliate him to the

point that he would resign and not run for political office.

## V. CAUSES OF ACTION

COUNT 1:   FIRST AMENDMENT VIOLATION – RETALIATION FOR POLITICAL SPEECH

5.1a   Lieutenant Coria alleges and incorporates the "Factual Allegations" section above as if fully set forth herein.

5.2a   A First Amendment political retaliation claim requires proof the plaintiff:

   a. suffered an adverse employment action;

   b. because of;

   c. his speech or activity related to matters of public concern.

5.3a   The First Amendment protects the right of public employees to speak as citizens on matters of public concern; Lieutenant Coria engaged in protected activity by publicly and vocally expressing a desire to run for political office.

5.4a   Lieutenant Coria's speech forms the basis for the retaliation resulting in an adverse employment action by being reassigned from the prestigious supervisory role to the far-less prestigious job of working Court House security detail. The close timing between Lieutenant Coria expressing a desire to run for Political office of Constable Precinct 2 and his reassignment demonstrates a causal connection between the events.

5.5a   Constable Gomez's conduct caused harm to Lieutenant Coria . As a direct and proximate result of his reassignment, Lieutenant Coria has suffered damages in the form of:

   a. lost wages, benefits, and compensation time;

   b. loss of reputation;

   c. loss of a preferred shift schedule and other desired working conditions;

      d. loss of the ability to exercise supervisory authority; and

      e. the intentional infliction of mental and physical pain, suffering, anguish, humiliation, and distress in connection with being reassigned to the Courthouse security detail.

5.6a    Constable Gomez acted under the color of law.

5.7a    Constable Gomez is the sole and final policymaker and, therefore, the Constables Office officially adopted and promulgated the decisions to inflict the aforementioned adverse employment actions.

5.8a    In order to assert a valid claim against an official in his individual capacity, a § 1983 claimant must establish that the Defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation. *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012). The doctrine of qualified immunity limits a public official's § 1983 civil liability for the performance of discretionary functions. *Moreno v. Texas A&M Univ-Kingsville*, 2006 WL 3030713 at 1 (SDTX 2006). Officials are protected from liability for civil damages so long as their conduct has not violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* Since 1992, it has been clearly established law that a lateral transfers from the law enforcement section to the jail section constitute an "adverse employment action." *See Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992); *see also Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996); *See Porter v. Valdez*, 424 Fed. Appx. 382 (5th Cir. 2011). Constable Gomez decision to reassign Lt. Coria to Security Detail is unreasonable in light of clearly established law because they:

      a. transferred a uniquely qualified Lieutenant from the prestigious position of Lieutenant with a supervisory role, where he handled major crimes, investigations and

      b. stripped him of all subordinates and supervisory duties;

    c. assigned him to shift schedules and working conditions not given to other CCCO Supervisor or Lieutenants

    d. have him report to a subordinate; and

    e. require him to perform menial and pointless tasks like standing watch outside the County Courthouse, which already has Sheriff's office Security detail.

Therefore, Constable Gomez is not entitled to qualified immunity against the claim against him in his individual capacity.

5.9a    Therefore, Constable Gomez is liable to the plaintiff, pursuant to First Amendment and 42 U.S.C. § 1983.

COUNT 2:    DECLARATORY RELIEF.

5.1b    Pursuant to 28 U.S.C. §§ 2201-2202, Lieutenant Coria seek declaratory judgment stating that Constable Gomez violated his right to freedom of expression, guaranteed by the First Amendment to the United States Constitution as described above. Pursuant to Federal Rule of Civil Procedure 57, Lieutenant Coria elects to have this claim tried before a jury.

COUNT 3:    INJUNCTIVE RELIEF.

5.1c    Lieutenant Coria requests that the Court grant a permanent injunction against Constable Gomez requiring them to assign Lieutenant Coria to a position with a supervisory authority, with all customary benefits and privileges given to supervisors of the Constable's Office and prohibiting them from subsequently reassigning him from there based on his protected activity expressing a desire to run for political office.

## IV. COMPENSATORY DAMAGES

6.1    As a direct and proximate result of the defendants' violations of Lieutenant Coria constitutional rights, he suffered the following injuries and damages:

      a.      Compensatory damages;

      b.      The wages, salary, profits, and earning capacity that plaintiffs lost and the presentvalue of the wages, salary, profits, and earning capacity that Lieutenant Coria is reasonably certain to lose in the future because of defendants' actions;

      c.      The mental/emotional pain and suffering that Lt. Coria has experienced and is reasonably certain to experience in the future; and

      d.      Nominal damages.

## VII. PUNITIVE DAMAGES

7.1   The acts of Constable Gomez, as described herein, we're motivated by an evil motive and intent to retaliate against Lieutenant Coria for engaging in a protected activity and involved a reckless and callous indifference to the federally protected rights. Therefore, Lieutenant Coria seeks punitive damages from Constable Gomez in his *individual* capacity.

## VIII. ATTORNEY FEES

8.1   Pursuant to 42 U.S.C. § 1988, Lt. Coria is entitled to an award to attorney's fees and costs

## IX. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, FELIPE DE JESUS CORIA, prays that Defendants, Cameron County Constable ABELARDO GOMEZ be cited to appear, and after trial on the merits:

a. judgment is issued declaring that Constable Gomez unlawfully deprived Lieutenant Coria of his right to free speech guaranteed by the First Amendment tothe United States Constitution, in violation of 42 U.S.C. § 1983;

b. Constable Gomez is ordered to assign Lieutenant Coria to a position that exercises supervisory authority, with all of the customary benefits and privileges granted to a Lieutenant/supervisors of the Cameron County Constable's Office, and prohibiting

    them from subsequently reassigning him from there based on his protected activity of intending to run for political office.

c. Lieutenant Coria recover:

    i. compensatory damages;

    ii. punitive damages;

    iii. all reasonable and necessary attorney's fees, court costs, and expenses in regard to the present suit in litigation; and

    iv. Any and all other general relief or specific relief to which he proves himself entitled or the Court may deem proper.

Respectfully submitted,

/s/ Cesar de Leon
CESAR DE LEON
Texas State Bar No. 24073774
Federal ID S.D.T.X No. 2202339
Email: cesar@cesardeleonlaw.com

LAW FIRM OF CESAR DE LEON PLLC
622 East St. Charles Street
Brownsville Texas 78520
Telephone +1.956.551.1327
Facsimile +1.956.338.5897
Email: service@cesardeleonlaw.com

/s/ Michael Gonzalez
MICHAEL GONZALEZ
Texas State Bar No. 24077594
Federal ID S.D.T.X. No. 1683056

LAW OFFICE OF MICHAEL GONZALEZ
613 East St. Charles Street
Brownsville, Texas 78520
Telephone +1.956.572.6792
Facsimile +1.512.532.0307

Attorneys for Plaintiff Felipe de Jesus Coria

## CERTIFICATE OF SERVICE

I, Cesar de Leon, Certify that on January 13, 2021, this Original Petition was filed in this action.

This Original Petition and copies of the summons will be served on the Defendant.

/s/ Cesar de Leon<br>
CESAR DE LEON<br>
January 13, 2022